STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0102


GOLDIE JACK

VERSUS

PRAIRIE CAJUN SEAFOOD WHOLESALE


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 04-4435
HONORABLE SHARON M. MORROW,
WORKERS' COMPENSATION JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and J. David Painter, Judges.


AFFIRMED.

Goldie Jack
In Proper Person
1900 Prejean F-91
Lake Charles, LA 70607
(337) 562-8106

Mark Ackal
Post Office Box 52045
Lafayette, LA 70505-2045
(337) 237-5500
COUNSEL FOR DEFENDANT/APPELLEE:
    Prairie Cajun Seafood Wholesale

PETERS, J.

In this workers' compensation action, the plaintiff, Goldie Jack, appeals the grant of a directed verdict dismissing her claim for benefits against her former employer, Prairie Cajun Seafood Wholesale (Prairie Cajun). For the following reasons, we affirm the judgment in all respects.

In her Disputed Claim For Compensation filed on June 24, 2004, Ms. Jack asserted that she sustained an injury while working at Prairie Cajun's crawfish peeling plant in Evangeline Parish, Louisiana. Specifically, she asserted in her pleadings that she "jerked [her] body" when she slipped on water on the floor of the work area.

At the October 24, 2006 trial, Ms. Jack testified, called two witnesses, and introduced five exhibits to support her claim. After Ms. Jack completed the presentation of her evidence, the workers' compensation judge (WCJ) granted Prairie Cajun's motion for directed verdict and dismissed Ms. Jack's claim. In doing so, the WCJ noted that the accident was unwitnessed and that the medical evidence presented by Ms. Jack did not support her position. Thereafter, Ms. Jack perfected this appeal.

**OPINION**

Although she had legal counsel when she filed her claim, Ms. Jack represented herself at trial and continues to do so on appeal. Her lack of legal training is evident in her expression of complaints on appeal, and this court has attempted to formulate those complaints into what we understand her arguments to be. We will address all of her arguments as we understand them, but not necessarily in the order raised in her appellate brief.

Ms. Jack began working for Prairie Cajun as a crawfish peeler on March 4, 2004, and was paid at the rate of $1.50 per pound of crawfish peeled. Each crawfish

peeling station had a bowl of water/iodine mixture available for the peeler to rinse his or her hands while working. The bowl had to be refilled from time-to-time from a larger container located at the end of the crawfish peeling table. The accident at issue is alleged to have occurred while Ms. Jack was refilling her bowl.

According to Ms. Jack, on April 27, 2004 (not April 22, 2004 as asserted in her pleadings), she slipped twice while returning to her work station with a refilled bowl. She testified that she sustained no injury the first time, but in the second incident she felt a pulling in the back of her leg, in her left knee, in the lower part of her back, and in her neck. She testified that the two incidents occurred approximately one-half hour apart, and that she did not fall to the floor in either incident. Ms. Jack claims to have sought medical attention on April 27, 2004. She further testified that April 28, 2004, was her last day of employment. She claims that she has been unable to work since that day due to her injuries.

When questioned by Prairie Cajun's counsel concerning the dynamics of the second incident, Ms. Jack could not remember whether she dropped the bowl of water when she slipped, whether it remained in her hands, or whether the water spilled out of the bowl. Additionally, she claimed that a co-worker named Betty observed the incident and commented to her that "[g]irl, I know you hurt yourself." However, Ms. Jack testified that she did not call Betty to testify because she and Betty had a subsequent disagreement.

Concerning the date of the accident, Ms. Jack testified on cross-examination that it occurred on April 22, 2004, not April 27 as she had previously testified. She continued to assert that she first sought medical care on April 27, 2004, when she presented herself to the Ville Platte Medical Center Emergency Room. She testified

that she has seen numerous doctors since the accident, and she introduced various medical records in support of this assertion.

Prairie Cajun introduced medical records which reflected that Ms. Jack did go to the Ville Platte Medical Center Emergency Room on April 27, 2004, but not before seeing her family physician, Dr. Charles Fontenot, a Ville Platte general practitioner. According to Dr. Fontenot's records, her complaints were not of having sustained an accident, but of headaches, vomiting, sinus difficulties, left leg pain, sore throat, and sneezing. The other medical records introduced by Prairie Cajun established that Ms. Jack has had a history of neck problems beginning in December of 1994. Ms. Jack asserted that the medical records were not accurate, but did acknowledge on cross-examination that she began receiving monthly disability benefits from Social Security in 1993 while working cash jobs peeling crawfish and farming sweet potatoes. She also acknowledged that she had been involved in automobile accidents in the late 1990's and in 2002, that she had asserted an earlier workers' compensation claim for a wrist and neck injury, and that she had been involved in multiple lawsuits.

The testimony of Ms. Jack's two other witnesses did not address the specifics of the accident or her current medical condition. Leola Rideau testified that Ms. Jack worked for her during 2002 and 2003, and during that time did not appear to have any injuries to her neck or back. Additionally, John Rideau testified that he helped move Ms. Jack and her mother from Lake Charles, Louisiana, to Ville Platte sometime in December of 2003. This testimony related to the accuracy of a medical record which will be discussed later in this opinion.

3

### *Argument Concerning Particulars of the Accident*

In one of her arguments, Ms. Jack complains about Prairie Cajun's legal counsel asking her why she did not call other employees who may have seen the accident to testify on her behalf. Without acknowledging her testimony concerning Betty's observance of the accident, she states in brief that she could not think of a witness who observed her "limping" on that day. Her argument is apparently that it was unfair for opposing counsel to question the lack of support for her accident, and that the WCJ erroneously relied on that lack of corroboration. We conclude that Ms. Jack is arguing error on the part of the WCJ in rejecting her claim based on lack of evidence. We disagree with this assertion.

Louisiana Revised Statute 23:1021(1) defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." An employee in a workers' compensation action must prove a work-related accident by a preponderance of the evidence. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The employee's testimony alone may be sufficient to discharge this burden, provided that (1) no other evidence discredits or casts serious doubt upon the employee's version of the incident and (2) the employee's testimony is corroborated by the circumstances following the alleged incident. *Id.* In determining whether the employee has discharged his burden of proof, the workers' compensation judge should accept as true a witness's uncontradicted testimony, even though the witness is a party, absent circumstances that cast suspicion on the reliability of that testimony. *Id.* Further, the workers' compensation judge's determinations on

whether the employee's testimony was credible and on whether the employee met his burden of proof are factual findings not to be disturbed on appeal absent manifest error. *Id.* Disability can be proven by both medical and lay testimony, and the workers' compensation judge must weigh all of the evidence in order to determine whether the employee has met his burden of proof of this element. *Bailey v. Smelser Oil & Gas, Inc.*, 620 So.2d 277 (La.1993). This also is a factual determination which is subject to a manifest error analysis. *Id.*

In this matter, Ms. Jack's testimony concerning the specifics of the accident was not contradicted by any eyewitness testimony. However, other evidence cast serious doubts on Ms. Jack's credibility, and the circumstances following the alleged accident did not corroborate her assertions of fact with regard to the accident or her medical treatment.

In granting the directed verdict, the WCJ acknowledged the status of the law as cited above, but concluded that Ms. Jack had not carried her burden of proof. We find no manifest error in the WCJ's factual findings. Thus, we find no merit in this particular argument.

### *Argument Concerning Effect of Prior Payments by Prairie Cajun*

Prairie Cajun paid Ms. Jack weekly compensation benefits from April 22, 2004, through October 15, 2004. Ms. Jack points out that in its pretrial statement, Prairie Cajun asserted that she did not receive an injury *on April 24, 2004.* Her argument in this regard seems to be that Prairie Cajun cannot decide which day the accident occurred and, therefore, should not be allowed to argue that she was not injured on April 22, 2004.

5

We find no merit in this argument. As previously discussed, Ms. Jack had difficulties with the dates in her testimony at trial, and it is clear from the record that the argument is over one accident only. That is to say, the *date* of the alleged accident was not a disputed issue in this case.

***Argument Concerning Accuracy of Certain Medical Records***

Medical records were introduced establishing that Ms. Jack was admitted to the Eunice Community Medical Center Emergency Room on May 21, 2005, complaining of injuries sustained in a fall the year before. The specific notation found in the record quoted Ms. Jack as saying, "I FELL IN CAJUN COUNTRY FLEA MARKET AND GROCERY STORE 1 YR AGO, AND I BEEN HURT'N EVER SINCE." When questioned at trial concerning whether she made this statement, Ms. Jack testified, "I might have. I done forgot what I told them people. I forgot." However, on appeal, she asserts that she never fell in that particular grocery store, "or any other store in my life." In other words, she asserts that the medical records are inaccurate.

The trial record also contains the December 8, 2003 medical records from the Ville Platte Medical Center, wherein Ms. Jack expressed complaints of pain in the neck associated with a history of problems with the discs in her neck. Ms. Jack questioned the accuracy of this record as well. According to Ms. Jack, she was not in Ville Platte on December 8. Instead, she asserted that she was in Lake Charles, in the process of moving her mother from the Chateau du Lac Apartments in Lake Charles to Ville Platte. In support of her assertion, Ms. Jack introduced a tenant ledger card, showing that her mother's move-out date from the Chateau du Lac Apartments was December 8, 2003. Ms. Jack stated that she was living with her mother in Lake Charles at that time. John Rideau testified that he helped her and her

6

mother move from Lake Charles to Ville Platte, and that they left Lake Charles at 7:00 or 8:00 p.m., but that he did not remember the date that they moved.

With regard to her belief in the medical records, the WCJ stated

[F]or me to completely believe you I would have to believe that each and every one of these medical records are wrong except the ones that you've presented. And while I am completely willing to accept that doctors and hospitals make mistakes, I am not willing to accept that they did so this many times.

We find no manifest error in the WCJ's factual conclusions with regard to the credibility of the medical records versus that of Ms. Jack. Therefore, we find no merit in this argument.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the workers' compensation judge dismissing Goldie Jack's claim for workers' compensation benefits against her former employer, Prairie Cajun Seafood Wholesale. We assess all costs of this appeal to Goldie Jack.[1]

**AFFIRMED.**

---

[1]When judgment is rendered against a party who has been allowed to litigate without the payment of costs, the party "shall be condemned to pay the costs incurred by him . . . and those recoverable by the adverse party." La.Code. Civ.P. art. 5188.