# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-470


**SCOTT CLOVER**

**VERSUS**

**REDFISH RENTALS, INC.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 20-05904
JONATHAN BROWN, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Charles G. Fitzgerald, and Gary J. Ortego,
Judges.


**AFFIRMED.**

**H. Douglas Hunter**
**Guglielmo, Lopez**
**306 East North Street**
**Opelousas, LA 70570**
**(337) 948-8201**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Redfish Rentals, Inc.**

**David Harmon Hanchey**
**Todd A. Townsley**
**Jackson T. Brown**
**Jordyn A. Goody**
**Hannah E. Mayeaux**
**The Townsley Law Firm**
**3102 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Scott Clover**

**ORTEGO, Judge.**

In this workers' compensation matter, the employer, Redfish Rentals, LLC, filed this appeal and argues that the Workers' Compensation Judge (WCJ) manifestly erred in finding that the factual evidence presented justified awards to Scott Clover, claimant, for workers' compensation benefits and medical benefits, along with statutory penalties, attorney's fees, and costs. Clover did not answer the appeal but requests additional attorney's fees for work done on this appeal. For the following reasons, we affirm the WCJ's judgment and deny Clover's request for additional attorney's fees for work done on appeal.

## FACTS AND PROCEDURAL HISTORY

Scott Clover (Claimant) was an employee of Redfish Rentals, LLC, (Appellant). Claimant alleged that he was injured in the course and scope of his employment on March 18, 2020. Claimant testified that he was kneeling next to a portable manlift working on repairing wiring, when his right lower extremity was caught under a metal plate, causing his foot and ankle to be compressed between the plate and concrete floor. Claimant notified his supervisor, Eric Westergren, of this accident on that same date. Claimant continued to work that day and attempted to work for the next few days before his supervisor, Westergren, told Claimant to take whatever time off work he needed to heal properly.

Prior to the accident, Claimant was diagnosed with diabetes. Claimant had been living with diabetes for approximately twenty years. Although he had a history of some medical issues dealing with his diabetes, in the five years prior to the March 18, 2020 accident, Claimant had no issues working and no issues with his right lower extremity. Moreover, prior to beginning work for Appellant, Claimant underwent a physical on October 8, 2019. The physician who performed that physical found Claimant fit for work with no restrictions or issues with any of his lower extremities.

On March 26, 2020, Claimant was seen at Lake Charles Urgent Care with complaints of right foot pain and swelling. X-rays were performed, and Claimant was diagnosed with a non-displaced right medial malleolus avulsion fracture. Thereafter, after seeing various health care providers, on May 20, 2020, Claimant's lower right leg was amputated due to the failure of his leg to heal and from a subsequent gangrenous infection. Claimant's treating physician, Dr. Tyson Green (Dr. Green), opined that Claimant's medical treatment and the need to amputate his lower right leg was directly related to his March 18, 2020 accident.

On May 28, 2020, Claimant, at his employer's request, wrote a detailed account of the work incident and subsequent events that led to the amputation of his lower right leg. Then, on June 5, 2020, approximately three months following this incident, Appellant reported the incident to its insurer, who denied the claim. Claimant then filed a Form 1008 on October 6, 2020.

Trial was held on the matter on November 2, 2021. The WCJ issued a judgment on March 18, 2022, finding that Claimant's accident was work related and resulted in injuries culminating with the amputation of his lower right leg. As per the judgment, Claimant was entitled to $688.00 in weekly temporary total disability benefits (TTD), and $12,040.23 for reimbursement for medical expenses. Further, the WCJ assessed Appellant with $2,000.00 in penalties, $16,120.00 in attorney's fees, and Claimant's costs. Appellant appeals this judgment raising six assignments of error.

## ASSIGNMENTS OF ERROR

On appeal, Appellant assigns the following errors by the WCJ:

1.   The [WCJ] erred in finding a work-related accident and/or injury.

2.   The [WCJ] erred in finding [Claimant] entitled to temporary total disability benefits.

2

3.    The [WCJ] erred in awarding benefits at the maximum rate, $688.00/wk.

4.    The [WCJ] erred in awarding [Claimant] $12,040.23 in medical reimbursement.

5.    The [WCJ] erred in awarding penalties for the alleged denial of the [Claimant's] choice of physician and initial visit.

6.    The [WCJ] erred in its award of attorney fees and costs.

## LAW AND DISCUSSION

*I.    Standard of Review*

In Louisiana:

> The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 So.2d 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

*Young v. CB&L, LLC*, 20-619, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 905, 909.

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978)).

Although a WCJ's decision to impose penalties is a factual finding subject to the manifest error standard of review, a "WCJ's award of penalties and attorney fees, that is the actual amount awarded, is entitled to great discretion and will not be disturbed absent an abuse of that discretion." *Williams v. Tioga Manor Nursing Home*, 09-417, p. 22 (La.App. 3 Cir. 11/18/09), 24 So.3d 970, 984, *writ denied*, 10-298 (La. 4/9/10), 31 So.3d 389 (citing *Int'l. Maint. Corp. v. Stoddard*, 05-676 (La.App. 3 Cir. 12/30/05), 918 So.2d 1077).

3

*II.     Unwitnessed Accident of March 18, 2020*

Appellant's first argument is that Claimant failed to establish that an on-the-job accident occurred on March 18, 2020. We disagree.

As in all workers' compensation cases, Claimant has the burden of proving the occurrence of a work-related accident by a preponderance of the evidence. *Bartley v. Schlumberger Tech. Co.*, 16-538 (La. App. 3 Cir. 12/7/16), 209 So.3d 123; *Sorile v. Lott Oil Co., Inc.*, 14-1156 (La.App. 3 Cir. 3/4/15), 160 So.3d 178. With respect to an unwitnessed accident, the manner in which this burden can be met is clearly established in the jurisprudence.

> An employee can prove an unwitnessed accident with her testimony alone if "(1) no other evidence discredits or casts serious doubt upon [her] version of the accident; and (2)[her] testimony is corroborated by the circumstances following the alleged incident." *Marange* [*v. Custom Metal Fabricators, Inc.*, 11-2678, p. 6 (La. 7/2/12)], 93 So.3d 1253[, 1257]. The "employee's" testimony may be corroborated by the testimony of coworkers, spouses, or friends, or by medical evidence. *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215 (citing *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992)). The WCJ's determinations that an employee is credible and that she satisfied her burden of proof are factual determinations that should not be disturbed by a reviewing court unless the determinations are "clearly wrong absent a showing of manifest error." *Bruno*, 593 So.2d at 361.

*Franklin v. Calcasieu Parish Sch. Bd.*, 12-1032, p. 2 (La.App. 3 Cir. 2/6/13), 108 So.3d 907, 909 (first, second and fourth alterations in original).

Additionally, an appellate court cannot reverse a WCJ's factual findings that are based on a reasonable credibility evaluation if the record "furnishes a reasonable factual basis for the trial court's finding[.]" Marange, 93 So.3d at 1258 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)).

When, as here, "there is a conflict in the testimony[,] reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are

4

as reasonable[,]" and "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Housley v. Cerise,* 579 So.2d 973, 976 (La.1991) (citing *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

In our case, the WCJ considered the evidence presented by both parties and found that "it has been shown by a preponderance of the evidence [Claimant] was involved in an accident while in the course and scope of his employment with [Appellant] on March 18, 2020." We find that the record provides sufficient evidence for the WCJ to have reached these conclusions.

Appellant argues that there is evidence in the record that casts serious doubt or discredits Claimant's testimony regarding the occurrence of a work-related accident. First, Appellant points out that Claimant's fellow employees testified that no one operates the lift on one knee as Claimant stated he was when the accident happened. While this may be the case when operating the lift, Claimant's testimony is that he was trying to fix a wire on the machine and testing whether his attempts to fix the machine were successful. Thus, the testimony that one never operates the lift on a knee does not cast serious doubt on Claimant's recollection of the accident.

Next, Appellant points out that some of Claimant's medical records reference a lawn mower falling on his foot as the cause of his pain, rather than a work-related accident. While this is correct, Claimant's treating physician, whose records mentioned a lawn mower falling on Claimant's foot, addressed these discrepancies first by verifying that he specifically remembered Claimant and that Claimant had never mentioned a lawn mower to him. As to how a history including a lawn mower ended up in his records, the treating physician theorized that the person first admitting Claimant at an Emergency Room during COVID restrictions likely misunderstood Claimant describing the injury occurring at a "yard," to mean a lawn

5

rather than his workplace, and that the machinery injured him in the yard. Further, the treating physician candidly admitted that, with electronic medical records, previous histories are simply copied repeatedly in subsequent records, and that this could be especially true here because any appearance of a lawn mower incident in Claimant's history are from medical facilities all in the same system.

Therefore, and although Appellant's assertions are accurate, they are reasonably explained, and their presence alone does not demand that we reject the WCJ's finding that a compensable workplace accident had occurred, especially given the corroborating testimony and medical evidence presented for consideration.

Additionally, the record indicates that Claimant informed his supervisor, Westergren, about the accident of March 18, 2020, and how it occurred that same day. Claimant also told his coworkers, Terry Guidry and Joshua Bailey, about the accident on March 18, 2020, and how it occurred that same day. Further, Claimant's testimony was corroborated and consistent with that of his significant other of thirty years, Jackie Perkins (Ms. Perkins). Ms. Perkins testified that on the date of the accident, Claimant told her about the accident and how it occurred, and that she took photographs of his injured right foot, which was swollen and had a scratch caused by the accident. A thorough review of the record shows that the medical evidence is consistent with Claimant's testimony that a work accident transpired. Finally, Claimant's treating physician, Dr. Green, testified that the injury and eventual amputation were caused by the workplace accident. Dr. Green's medical opinion is uncontroverted. His initial medical records at Lake Charles Urgent Care indicate that Claimant's pain in his right foot was from trauma the week prior to March 26, 2020. Finally, Claimant's medical records from after receiving his eventual prosthesis also indicate that the amputation cause was a "crush work injury."

Applying the manifest error rule, we see no basis to second guess the trier of fact who heard the conflicting evidence and who observed the demeanor of all the witnesses at trial and found Claimant's testimony to be credible.

Accordingly, we find no merit to Appellant's first assignment of error.

III.    *Temporary Total Disability Benefits*

Next, Appellant argues that the WCJ erred in finding Claimant entitled to TTD benefits. According to Appellant's succinct argument on this assigned error, the records of Claimant's treating physician are silent regarding disability, thus Claimant necessarily failed to carry his burden of proof on this issue.

For Claimant to receive TTD benefits, he must prove by clear and convincing evidence unaided by any presumption of disability, that he is physically unable to engage in any employment as a result of a work-related injury. La.R.S. 23:1221(1). Such disability can be proven by lay and/or medical testimony, and the WCJ weighs all evidence in deciding whether the employee has satisfied that burden of proof. *Jack v. Prairie Cajun Seafood Wholesale*, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, *writ denied*, 07-2388 (La. 2/15/08), 976 So.2d 178.

Although Appellant correctly notes that Claimant's treating physician never opined whether Claimant was disabled, Claimant counters that the totality of the record justifies the WCJ's finding. First, Claimant points out that he applied for and began receiving social security disability benefits, and entitlement to those benefits requires that an individual cannot work or engage in substantial gainful activity because of a medical condition. Clearly, the medical condition that prevented Claimant from working was his amputated lower right leg. Next, jurisprudence states that entitlement to TTD can be established by lay testimony. Here, Claimant testified as follows:

7

Q     Since your accident, have your doctors placed you on any kind of work restrictions?

A     My regular doctor, you know, I can't work. I mean, I can't work.

. . . .

Q     Go ahead, Mr. Scott.

A     I'm just saying that I can't work, do what work I know how to do. I can't climb. I can't, you know, kneel down, lay on the ground and do the stuff I was used to doing all my life.

Q     And prior to this accident, where you having any problems or issues performing any of your work responsibilities for Redfish?

A     No, sir. No, sir.

After a thorough review of the record, we find that a sufficient basis exists for the WCJ to find that Claimant was entitled to TTD. The standard of review and applicable jurisprudence mandate that such uncontroverted evidence can be sufficient to find a claimant entitled to TTD. As such, we decline to second guess the trier of fact on this issue, and thus find no merit to this assignment of error.

IV.    *Weekly Benefit Amount*

Appellant next asserts that the WCJ erred in awarding benefits at the maximum rate of $688.00 per week. According to Appellant, the stipulation that Claimant was a full-time employee earning $24.00 per hour mandates his average weekly wage is $960.00, with a compensation rate of $640.00 per week, not the maximum of $688.00.

Claimant points to La.R.S. 23:1021(13)(a)(i), which states, "[i]f the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater." Here, in the four weeks prior to the March 18, 2020 accident, as evidenced by Claimant's pay stubs submitted as Exhibit P14, his average weekly wage was $1,135.23. The

8

compensation rate of such an average weekly wage is $756.82, which entitles Claimant to the maximum rate of $688.00.

After reviewing the record, Claimant's pay stubs are present and indicate no error by the WCJ in establishing the compensation rate of $688.00 weekly. Moreover, the deposition testimony of Julian Ford, an adjuster working for Summit, Redfish Rental's insurer/administrator, cites Claimant's calculated compensation rate of $688.00 per week. As such, this assignment of error lacks merit.

V.    *Medical Reimbursement*

The next assigned error by Appellant is that the WCJ erred in awarding Claimant $12,040.23 in medical reimbursement. According to Appellant's brief, Medicaid paid all medical expenses and an involved provider, Healthy Blue, would be subrogated for Claimant to any rights for reimbursement. Appellant presents no argument in its brief as to why the amount is incorrect or how Healthy Blue's lien is relevant to the amount awarded by the WCJ. At oral argument, Appellant's counsel argued that Claimant did not enter evidence of the existence of the Medicare lien in the record.

However, the record, specifically Plaintiff's Exhibit 19, indicates that Healthy Blue Medicaid Managed Care notified Claimant of its lien and rights of subrogation. Thus, Appellant's oral argument is meritless. The record further contains an itemized list indicating that Healthy Blue Medicaid paid a total of $8,042.52. Additionally, Claimant submitted bills in the amount of $127.00 from The Pathology Laboratory, Inc. and $3,870.71 from Christus St. Patrick Hospital that do not appear in the Healthy Blue list of items paid. These two bills indicate that Claimant's private insurance covered a portion of the care provided, except those two amounts. Those two amounts, in addition to the amount paid by Healthy Blue Medicaid Managed Care, total $12,040.23.

Thus, we find the WCJ's award of that amount is supported by the record, and this assignment of error is without merit.

## VI. *Penalties, Attorney's Fees, and Costs*

Finally, Appellant alleges error by the WCJ erred in awarding penalties, attorney's fees and costs. We find no error in the WCJ's rulings on these matters.

> [I]n order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

*Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. The employer has a duty to investigate the employee's claim before the denial of benefits. *Penn v. Wal-Mart Stores, Inc.*, 93-1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, *writ denied*, 94-1835 (La. 10/28/94), 644 So.2d 651. Failure to investigate the employee's claim subjects the employer to penalties and attorney fees. *McClendon v. Keith Hutchinson Logging,* 96-2373 (La.App. 1 Cir. 11/7/97), 702 So.2d 1164, *writ denied*, 97-2872 (La. 2/13/98), 706 So.2d 995.

Here, the record establishes that Claimant, on March 18, 2020, informed his supervisor, Westergren, of the accident. Claimant tried to work after the accident but was unable to do so. He then requested time off to heal from the accident. Westergren told Claimant to take "all the time he needs" to get better. Thereafter, when complications from the injured foot required more time off work to try and heal, again Claimant was told by Westergren "to take as long as he needs to get to 100%." Despite these events, the accident was not reported to Redfish Rental's insurer until June 5, 2020, three weeks after the amputation, and only after Claimant

submitted a detailed, handwritten letter of the accident and subsequent medical treatment in May of 2020.

As we previously found no manifest error in the WCJ's finding that claimant established that he suffered a compensable workplace injury while in the course and scope of his employment, we likewise conclude that Appellant is answerable for the legal consequences that flowed from it, including penalties, attorney's fees, and other costs, plus legal interest pursuant to La.R.S. 23:1201.3(A). As such, we cannot say that the WCJ was manifestly erroneous.

In this case, the WCJ awarded a single $2,000.00 penalty. Additionally, the WCJ awarded Claimant $16,120.00 in attorney fees, as well as costs, expert's costs, and legal interest. The record furnishes no basis for this court to conclude that the WCJ was clearly wrong to sanction Appellant for its failure to abide by the legal requirements established by the workers' compensation laws of Louisiana and the facts of this case.

VII. *Attorney's Fees for Work Done on Appeal*

Claimant's attorney requested in his appeal brief additional attorney's fees for the work necessitated by this appeal. We deny this request.

"It is well-established that a workers' compensation claimant who is successful in defending an appeal may be entitled to an award of additional attorney fees." *McCain v. Motel 6,* 19-653, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, 143, *writ denied,* 20-764 (La. 10/6/20), 302 So.3d 535).

Here, there is no doubt that Claimant has incurred more costs in successfully defending his award from the WCJ's judgment, and an award of attorney's fees for work done on appeal may be proper. However, an appellee who neither answers an appeal nor appeals from the trial court's judgment is not entitled to additional attorney's fees for legal services rendered on appeal. La.Code Civ.P. art. 2133; *Trejo*

11

*v. Canaan Const., LLC*, 52,697 (La.App. 2 Cir. 6/26/19), 277 So.3d 499. Although a request for additional attorney fees is made in his appeal brief, Claimant did not correctly request them by answering this appeal. "An assertion in a brief cannot serve as an answer to appeal." *Pritchard v. GEICO Ins. Co.*, 17-273, 17-274, p. 10 (La.App. 3 Cir. 11/8/17), 242 So.3d 787, 794. Thus, we deny Claimant's request to increase his award for attorney fees incurred in the process of this appeal.

## DECREE

For the reasons set forth herein, the judgment of the Workers' Compensation Judge finding a compensable work-related injury and awarding Scott Clover workers' compensation benefits, medical benefits, statutory penalties, attorney's fees, and costs is affirmed. Additional attorney's fees for work done on appeal by Clover are denied due to procedural deficiencies. All costs of this appeal are assessed to Redfish Rentals, LLC.

**AFFIRMED.**