STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

25-633


RAY PATT

VERSUS

AMERIGAS, INC. AND INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 9
PARISH OF TERREBONNE, NO. 23-1527
HONORABLE ELIZABETH C. LANIER
WORKERS' COMPENSATION JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Gary J. Ortego,
Judges.


AFFIRMED IN PART; REVERSED IN PART;
AND AMENDED IN PART.

**Kirk L. Landry**
**Virginia J. McLin**
**Keogh, Cox & Wilson, Ltd.**
**701 Main Street**
**Baton Rouge, Louisiana 70821**
**(225) 383-3796**
**Counsel for Defendants/Appellants:**
    **Amerigas, Inc.**
    **Indemnity Insurance Company of North America**

**Antonio L. Finley, Jr.**
**Gordon McKernan Injury Attorneys**
**5656 Hilton Avenue**
**Baton Rouge, Louisiana 70808**
**(225) 231-1902**
**Counsel for Plaintiff/Appellee:**
    **Ray Patt**

**FITZGERALD, Judge.**

The issue here is whether the workers' compensation judge (WCJ) erred in awarding the claimant, Ray Patt, compensation benefits, penalties, and attorney fees.

## FACTS AND PROCEDURAL HISTORY

Ray was formerly employed by Amerigas Inc. In July 2021, he was injured in a motor vehicle accident during the course of employment. Amerigas deemed the accident compensable and began paying him workers' compensation indemnity benefits.

In March 2022, Ray underwent back surgery. Nine months later, on December 30, 2022, Amerigas discontinued his benefits based on a second medical opinion. A few months after that, Ray filed a disputed claim for compensation against Amerigas and its insurer, Indemnity Insurance Company of North America. Defendants answered the claim.

Trial was held on May 8, 2025. The WCJ ruled from the bench at the close of evidence and gave oral reasons at that time. A written final judgment followed on June 30, 2025. In essence, the WCJ awarded Ray temporary total disability benefits from December 31, 2022, through July 10, 2023, totaling $14,174.38; supplemental earnings benefits from July 11, 2023, through the date of trial, totaling $51,205.88; penalties in the amount of $2,000.00; and attorney fees in the amount of $8,000.00. Defendants appealed.

On appeal, Defendants assert three assignments of error (emphasis in original):

1. The [WCJ] committed legal error when she awarded temporary total disability benefits for the time period December 31, 2022 to July 10, 2023 when *no* evidence was presented that Claimant/Appellee, Ray Patt, could not work, in any capacity, at any job, even if working in pain.

2.     The [WCJ] committed legal error when she awarded supplemental earnings benefits from July 11, 2023 to the date of trial. The trial court prematurely shifted the burden of proof as it relates to supplemental earnings benefits to the Defendants/Appellants, Amerigas, Inc. and Indemnity Insurance Company of North America, where Claimant/Appellee, Ray Patt, did not first meet the minimum requirements outlined in La. R.S. 23:1221(3).

3.     The [WCJ] committed legal error when she awarded penalties and attorney's fees. The evidence presented at trial and the judge's own statement showed that the claim was reasonably controverted.

Ray, in turn, seeks additional attorney fees for work done in this appeal.

## LAW AND ANALYSIS

"The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong." *Young v. CB&L, LLC*, 20-619, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 905, 909 (citation omitted).

"Conversely, when legal error interdicts the fact-finding process in a workers' compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." *Gaines v. Home Care Solutions, LLC*, 15-895, p. 9 (La.App. 4 Cir. 4/6/16), 192 So.3d 794, 801.

One more thing: the rules of evidence are relaxed in workers' compensation cases under La.R.S. 23:1317(A). Hence, the WCJ has the discretion to admit hearsay statements. *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 3/4/98), 708 So.2d 375.

### Defendants' First Assignment of Error

Defendants initially assert that the WCJ legally erred in awarding Ray temporary total disability benefits. However, nothing in the record reflects legal

2

error in the award of these benefits. We therefore review this assignment for manifest error.

Temporary total disability benefits are addressed in La.R.S. 23:1221. Subparagraph (1)(C) of that statute states in relevant part:

> [C]ompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

This court addressed the claimant-employee's burden of proof in *Clover v. Redfish Rentals, Inc.*, 22-470, p. 7 (La.App. 3 Cir. 2/2/23), 357 So.3d 522, 530:

> For Claimant to receive TTD benefits, he must prove by clear and convincing evidence unaided by any presumption of disability, that he is physically unable to engage in any employment as a result of a work-related injury. La.R.S. 23:1221(1). Such disability can be proven by lay and/or medical testimony, and the WCJ weighs all evidence in deciding whether the employee has satisfied that burden of proof. *Jack v. Prairie Cajun Seafood Wholesale*, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, *writ denied*, 07-2388 (La. 2/15/08), 976 So.2d 178.

Here, the record evidence consists of Ray's trial testimony, a few pages of Ray's deposition testimony, Dr. Patrick A. Juneau III's second medical opinion, Dr. Juneau's supplemental second medical opinion, the medical records reviewed by Dr. Juneau (including many of Dr. Ilyas Munshi's records), and Defendants' notice of suspension of benefits.

Ray's treating physician is Dr. Munshi, a neurosurgeon. As stated above, many of Dr. Munshi's medical records are included in the documents that were reviewed by Dr. Juneau. Those records, for example, show that Ray initially saw Dr. Munshi on July 29, 2021. And at that time, Dr. Munshi issued the following work recommendation: "No return to work until further notice due to current

restrictions on activities of daily living (ADL's): No lifting over 10 and 5 pounds, No pushing or pulling over 10 pounds, No kneeling/squatting, No bending/stooping and No Twisting."

Dr. Munshi's medical records then show office visits with Ray on August 17, 2021; September 23, 2021; October 7, 2021; October 28, 2021; December 14, 2021; February 3, 2022; and February 15, 2022. At each of these appointments, Dr. Munshi maintained the same work recommendation: "No return to work until further notice due to current restrictions on activities of daily living[.]"

Next, Dr. Munshi's medical records show that he performed back surgery on Ray on March 16, 2022. Specifically, Dr. Munshi performed an anterior lumbar interbody fusion and a posterior spinal fusion. Following surgery, Dr. Munshi's records show office visits with Ray on March 31, 2022; April 28, 2022; June 14, 2022; July 28, 2022; and August 16, 2022. And at each of these appointments, Dr. Munshi's recommendation of not returning to work remained unchanged.

Although no other medical records from Dr. Munshi are in evidence, Ray testified that on November 1, 2022, he met with Dr. Juneau, an orthopedic surgeon, for a required second medical opinion. Dr. Juneau's report is dated that same day. Here is the relevant part of that report:

> I do not recommend any further surgery upon his lumbar spine at this point. I think that he would be at maximum medical improvement at the nine-month mark postoperatively which would be about January 1, 2023. If there are any questions regarding his ability to return to work and in what capacity, I would recommend he undergo a Functional Capacities Evaluation at this point in time.

Based on Dr. Juneau's opinion as to maximum medical improvement, Defendants discontinued Ray's benefits on December 30, 2022.

Yet nearly two years later, on October 10, 2024, Dr. Juneau issued a supplemental report. That report states in pertinent part:

> Ray Pratt is seen again in the office today. I last saw him on 11-1-22. When I saw him at that time, he had recently undergone a postoperative lumbar MRI, which showed a nice decompression at the L4-5 and L5-S1 levels. I thought that the patient would be at maximum medical improvement with reference to the lumbar operation by January 1, 2023, and I recommended that he undergo a Functional Capacities Evaluation to address his work capabilities. After the office visit on 11-1-22, the patient went back to see Ilyas Munshi, M.D. on 12-13-22. He also saw Dr. Munshi on 1-24-23 and Dr. Munshi felt that he would be at maximum medical improvement by July of 2023 and he recommended that a Functional Capacities Evaluation be done. He was seen by Dr. Munshi again on 7-11-23 and in that note Dr. Munshi states "he had an FCE done that showed he can do light/sedentary work[.]" The patient saw Dr. Munshi again on 9-5-23 and again in that office note Dr. Munshi states "he can only do sedentary/light duty work." The patient was seen by Dr. Munshi again on 11-7-23 and in that office note Dr. Munshi recommended that the patient undergo a follow-up MRI of the lumbar spine. The patient saw Dr. Munshi again on 12-19-23 and in that office visit, Dr. Munshi reviewed the follow-up post-operative MRI of the lumbar spine that was done on 11-30-23 at Envision Imaging of Acadiana. This study showed only postoperative changes, and no residual neural impingement was noted on that study. Then the patient went back to see Dr. Munshi again on 2-27-24. On 4-25-24 he went back to see Dr. Munshi and in that office note Dr. Munshi stated "he can do sedentary/light duty work."
>
> . . . .
>
> . . . As I stated back on 11-1-22, I think that Ray Patt is at maximum medical improvement. I thought that he was at maximum medical improvement by 1-1-23. Dr. Munshi was following him and extended the maximum medical improvement to the summer of 2023. But, nonetheless, certainly as this point, Ray Patt in my opinion is at maximum medical improvement. He scored in the sedentary to light duty work category on the Functional Capacities Evaluation. I think it would be appropriate at this point for a vocational rehabilitation specialist to search the marketplace and find a job that is compatible with his present work capabilities.

Ray testified to many of these facts, including Dr. Munshi's work recommendations. Ray also confirmed that he had not worked since his accident in July 2021.

In the end, the evidence clearly shows that Ray's treating physician did not release him for work—any kind of work—until July 11, 2023. Thus, the WCJ did not manifestly err in finding that Ray was totally disabled from December 31, 2022, through July 10, 2023, and in awarding him temporary total disability benefits for that time.

***Defendants' Second Assignment of Error***

In this assignment, Defendants assert that the WCJ legally erred in awarding Ray supplemental earnings benefits. They specifically argue that the WCJ prematurely shifted the burden of proof to them to defeat the claim.

Supplemental earnings benefits are addressed in La.R.S. 23:1221(3)(a)(i):

> For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits, payable monthly, equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his wages by fifty-two and then dividing the product by twelve.

These benefits were at issue in *Banks v. Industrial Roofing Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. In that case, the supreme court provided the following statement of law:

> "The purpose of [supplemental earnings benefits] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his

6

> inability to earn that amount under the facts and circumstances of the individual case. *Freeman* [*v. Poulan/Weed Eater*], 93-1530 at p. 7 [(La. 1/14/94)], 630 So.2d [733] at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." *Daigle v. Sherwin–Williams Co.*, 545 So.2d 1005, 1007 (La.1989).
>
> Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LA.REV.STAT.ANN. § 23:1221(3)(c)(i) (West Supp.1997); *Daigle*, 545 So.2d at 1009.

*Id*. at 556 (fourth alteration in original).

Put simply, the burden of proof does not shift to the employer until the employee proves an inability to earn ninety percent or more of his pre-injury wages. And this initial burden is not satisfied by showing only that a work restriction prevents the employee from returning to his former job. For example, in *Bridges v. Gaten's Adventures Unlimited, L.L.C.*, 14-1132, p. 15 (La.App. 1 Cir. 4/2/15), 167 So.3d 992, 1003–04 (citation omitted), the first circuit explained:

> The burden of proof does not shift to the employer merely because an employee proves she is unemployed at the time of trial or unable to obtain the same type of job as before the accident. *Poissenot* [*v. St. Bernard Par. Sheriff's Office*, 09-2793 (La. 1/9/11)], 56 So.3d [170] at 178. A claimant's testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits. *Sartin v. LSU/Bogalusa Medical Center*, 07-1367 (La.App. 1 Cir. 2/8/08), 984 So.2d 777, 780. As explained by the supreme court, "The statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed." *Poissenot*, 56 So.3d at 175.

In our case, the WCJ relied on Ray's medical records and deposition testimony in finding that he had satisfied his initial burden of proof. As the WCJ put it:

So we have finally, in July [2023], MMI with a disability level of sedentary to light. Then we have evidence through the deposition, and that's testimony saying they do not have a light duty job. So right there that's telling you, you can't make 90 percent because you don't have a job to go back to.

So at that point, the burden of proof shifts and the employer should have done voc. rehab or identified jobs that would make 90 percent and if that were done, that would terminate the benefits. That wasn't done.

To summarize, the WCJ concluded that Ray met his threshold burden by showing two things: first, that he was restricted to sedentary and light jobs. And second, that this work restriction prevented him from returning to his former job at Amerigas. But this is plainly insufficient under the statute. Instead, the initial inquiry is whether Ray presented prima facie evidence that he was unable to earn ninety percent or more of his pre-accident average weekly wage from another job—any job.

The WCJ here misapplied the law by prematurely shifting the burden of proof to Defendants. This legal error interdicted the fact-finding process, thereby necessitating de novo review. And based on our de novo review of the record, Ray did not satisfy his initial burden of proof.

To illustrate, we know from Ray's trial testimony that he was employed by Amerigas as a truck driver. We also know that he did not renew his commercial driver's license because of his work restrictions. But that is it. There is no other evidence of Ray's earning capacity. He did not discuss his education level. He did not talk about his work history. He did not mention his experience or transferable

skills. Nor did he say anything about the amount of his pre-injury wages paid by Amerigas.[1]

If that were not enough, Ray admitted at trial making no effort to find another job:

> Q.   [Ray], have you applied for work anywhere?
>
> A.   No, ma'am.
>
> Q.   And you've already said that you can return to light duty work, correct?
>
> A.   Yes, ma'am.

At a minimum, Ray was required to put on evidence that he looked for another job, any job, after being released for sedentary to light work. For instance, in *Joseph v. J.E. Merit Constructors, Inc.*, 01-1666, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 72, 77, *writ denied*, 02-2295 (La. 4/4/03), 840 So.2d 1201, the claimant "testified that she did not remember if she had applied for work anywhere since her last day of work for J.E. Merit and stated that she has not been back to work for J.E. Merit." On that basis, the first circuit found that the claimant did not prove her entitlement to supplemental earnings benefits.

In conclusion, Ray did not satisfy his initial burden of proof for supplemental earnings benefits; the burden never shifted to Defendants. Thus, the WCJ's award of these benefits to Ray is reversed.

---

[1] The WCJ's oral reasons for judgment address Ray's wages this way: "So I am finding – now, also the pleading, the 10-08 has at the bottom: Occupation, truck driver, average weekly wage $780, Workers' Compensation rate $519.48. The answer does not specifically deny the AWW Workers' Comp. rate." Presumably, the WCJ treated these facts—average weekly wages and workers' compensation rate—as judicial admissions.

***Defendants' Third Assignment of Error***

In their final assignment, Defendants assert that the WCJ erred in awarding Ray penalties and attorney fees. We disagree.

As stated earlier, Defendants discontinued payment of Ray's benefits on December 30, 2022. The applicable statute is La.R.S. 23:1201, which states in relevant part:

> I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

As noted, the record evidence shows that Ray's treating physician was Dr. Munshi; that Dr. Munshi recommended on July 29, 2021, that Ray not return to work until further notice; and that this work recommendation did not change until July 11, 2023, when Dr. Munshi released Ray for "light/sedentary work."

Even so, Defendants argue that the discontinuance of benefits was appropriate because it was based on Dr. Juneau's second medical opinion of November 1, 2022. In his report, Dr. Juneau states: "I think that [Ray] would be at maximum medical improvement at the nine-month mark postoperatively which would be about January 1, 2023." But Dr. Juneau does not say that Ray could return to work upon reaching maximum medical improvement. Instead, he states that "[i]f there are any questions regarding his ability to return to work and in what capacity, I would recommend he undergo a Functional Capacities Evaluation at this point in time."

To sum up, the trial court did not manifestly err in awarding Ray penalties and attorney fees. However, based on our disposition of Defendants' second assignment of error, we will amend the WCJ judgment to reduce the penalty amount from

10

$2,000.00 to $1,000.00, and we will amend the judgment to reduce the attorney fee award from $8,000.00 to $4,000.00.

***Ray's Request for Additional Attorney Fees***

In his appeal brief, Ray requests additional attorney fees for defending the appeal. The same request was made and rejected in *Clover*, 357 So.3d 522. There, this court explained:

> "It is well-established that a workers' compensation claimant who is successful in defending an appeal may be entitled to an award of additional attorney fees." *McCain v. Motel 6*, 19-653, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, 143, *writ denied*, 20-764 (La. 10/6/20), 302 So.3d 535).
>
> Here, there is no doubt that Claimant has incurred more costs in successfully defending his award from the WCJ's judgment, and an award of attorney's fees for work done on appeal may be proper. However, an appellee who neither answers an appeal nor appeals from the trial court's judgment is not entitled to additional attorney's fees for legal services rendered on appeal. La.Code Civ.P. art. 2133; *Trejo v. Canaan Const., LLC*, 52,697 (La.App. 2 Cir. 6/26/19), 277 So.3d 499. Although a request for additional attorney fees is made in his appeal brief, Claimant did not correctly request them by answering this appeal. "An assertion in a brief cannot serve as an answer to appeal." *Pritchard v. GEICO Ins. Co.*, 17-273, 17-274, p. 10 (La.App. 3 Cir. 11/8/17), 242 So.3d 787, 794." Thus, we deny Claimant's request for attorney fees incurred in the process of this appeal.

*Id*. at 532.

Like the claimant in *Clover*, Ray did not appeal the WCJ's judgment. Nor did he answer Defendants' appeal. Ray's request for additional attorney fees is therefore denied.

## DISPOSITION

For the above reasons, the part of the June 30, 2025 judgment that awarded Ray temporary total disability benefits is affirmed. The part of the judgment that awarded Ray supplemental earnings benefits is reversed. The part of the judgment that awarded Ray penalties and attorney fees is amended to reduce the amount of the

penalties to $1,000.00 and to reduce the amount of the attorney fees to $4,000.00; and as amended, that part of the judgment is affirmed.

The costs of this appeal are assessed as follows: one-half to Ray and one-half to Defendants.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED IN PART.**